IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| GEORGE ENNENGA, as Father and Next Friend of INDIA ENNENGA, a minor,<br><br>Plaintiff,<br><br>vs.<br><br>LOWELL W. STORTZ, LEONARD, STREET AND DEINARD, P.A., and WOODRUFF A. BURT,<br><br>Defendants. | AT LAW<br><br>No. 06 C 50117<br><br><br><br><u>SUPPORTING MEMORANDUM OF LAW FOR DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u> |

NOW COMES the Defendant, WOODRUFF A. BURT, by his attorneys, MATEER & ASSOCIATES, and for his Supporting Memorandum of Law in Support of Defendant's Motion for Summary Judgment states as follows:

## I.

### Legal Standard

A clear description of the legal standard for a summary judgment motion is found in *Riley v. Argonaut Midwest Holdings, LLC*, 2007 W.L. 2461661, page 1 (N.D. Ill.), "Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ.P. 56(c). In seeking a grant of summary judgment, the moving party must identify 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.' *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986)(quoting Fed.R.Civ.P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out 'an absence of evidence to support the nonmoving party's case.' *Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, 'by affidavits or as otherwise provided for in

[Rule 56], and must set forth specific facts showing that there is a genuine issue for trial.' Fed.R.Civ.P. 56(e). A 'genuine issue' in the context of a motion for summary judgment is not simply a 'metaphysical doubt as to the material facts.' *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.D.2d 538 (1986). Rather, the genuine issue of material fact exists when 'the evidence is such that a reasonable jury could return a verdict for the non-moving party.' *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 Sup.Ct. 2505, 91 L.Ed.2d 202 (1986); *Insolia v. Phillip Morris, Inc.*, 216 F.2d 596, 599 (7th Circuit 2000). The court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969 (972) (7th Circuit)."

## II.

### Thomas Ennenga's intent was clearly expressed and unambiguous.

There is no ambiguity in the language used by Thomas Ennenga in his revocable trust, Sec. 8.B.2.c. The paragraph clearly divides the residue of the George Ennenga trust equally between all grandchildren. The plaintiff is not arguing to this court that the language in paragraph 8.B.2.c. in Thomas Ennnega's revocable trust is ambiguous, but it is alleging that the language does not evidence the intent of Thomas Ennenga.

The plaintiffs allege that the attorneys were instructed by Thomas Ennenga to prepare the document in a different manner than the document actually reads as executed by Thomas Ennenga. The uncontradicted evidence is that Thomas Ennenga intended India Ennenga to receive less than the other grandchildren. Thomas Ennenga instructed Lowell Stortz to prepare the paragraph (8.B.2.c.) as written,

Lowell Stortz deposition
Page 49, lines 5-13

> Q. Oh, okay. The issue that you said was in flux, whether India gets one-seventh of the entire estate or one-seventh of George's share, was the flux ever reduced to certainty? Did there ever come a decision point on that?

-2-

> A. Yes.
>
> Q. When was that?
>
> A. Throughout the rest of the course of the estate planning process.

Lowell Stortz deposition
Page 66, lines 20 -
Page 67, line 19

> Q. Mr. Stortz, did you tell Thomas Ennenga and his wife that he was treating India different from the other grandchildren
>
> A. Yes.
>
> Q. When did you tell him?
>
> A. He told me that several times, so it was in the course of our conversation.
>
> Q. Tell me what he said in each conversation and when it occurred.
>
> A. In the initial meeting Tom was inclined -- and this will tell you why it was in flux -- to not give India anything, because he thought she was well provided for from other family members.
>
> He also wanted to avoid hurting anyone's feelings, so that's why he wondered where -- what he should ultimately do.
>
> But he came in with that position, so certainly I didn't feel like I needed to tell him, in response to his own statement, that his plan might not treat his grandchildren the same.
>
> Q. So you didn't tell him that his plan didn't treat them the same because you felt he already knew that, is that what you're saying?
>
> A. I didn't feel it, he told me.

Woodruff Burt deposition
Page 22, lines 15 -
Page 25, line 9

> Q. Could you tell us what the broad outline of it was?
>
> A. The broad outline was that they were having Stortz prepare a revocable trust. They were shifting from wills, just using a will as their primary document, to a revocable trust.
>
> And the trust would have generation skipping features in that, that it would include a spendthrift trust for George. It was taking out some -- removing some cash gifts that Ida Lou had had in her previous will.

-3-

And I am sure at some point in there he explained their intentions as to the disposition or the residue of George's trust to divide that equally among the grandchildren, there being seven at that time.

And do I remember every sentence that was spoken? Obviously, not, but I'm sure we covered -- I'm sure that he detailed to me at that time. And then I was to call Stortz. And I did.

I called him, didn't get him. And then he called back on whatever it was. I think it was the 18th of May. And we had a conversation.

Q. Do you remember all that from your own independent recall or have you reviewed anything in preparation for this deposition that refreshed your memory on the sequence of the events?

You talked to Tom Ennenga. Then you called Stortz. He wasn't there. He called you back. Do you have an independent recall of that?

A. Well, I have gone back through and looked at, for example, on Page 7 of Group Exhibit No. 1 there is a specific entry, 5/12, "Received telephone call from Tom Ennenga. Called Attorney Stortz."

And I'm very confidant that Tom outlined what they were intending to do to me at that time.

Q. Do you specifically recall him discussing the equal distribution to grandchildren in that first conversation or, to use your words, are you confident that he did?

A. I am confident. I cannot go beyond that. I only know that Tom was very emphatic as to what they wanted to do.

And that spendthrift trust was the lead item on their agenda of what they wanted to do. And then there were -- there wasn't just one conversation. There were a number of conversations.

And what was said in any one of those is problematic, for me to remember, but I can say with a great degree of certainty that Tom explained to me that as to the residue of George's trust, that they wanted it spread to all seven grandchildren.

And that their reasoning was that the mother of this India Ennenga come from a very wealthy family.

And in their words, their other grandchildren needed the money more than they did. And, at the same time, they didn't want to totally ignore her. So they decided to give her a share.

And whether that was all said in that first conversation on May 12th or it most probably was said then, but it was certainly said to me in conversations after that. Time and date, unknown.

Woodruff Burt deposition
Page 39, lines 3 -
Page 40, line 5

> Q. Well, I hope I have, but be that as it may, tell me why it is that you think I am wrong?
>
> A. I also stumbled when I read this, but I knew absolutely what Tom and Ida Lou had told me.
>
> And they told me on more than one occasion that they -- the way they typically got into it was that India's grandmother and her mother came from a family with a great deal of money.
>
> And I suspect at one point they may have considered not leaving anything to India, but at any rate when they spoke to me, they said, "We don't want to totally ignore her, but we don't want to leave George's -- whatever is left of George's just to India. She doesn't need the money so much as our other grandchildren will need it."
>
> Q. You said you suspect they may have considered not leaving India anything. Is that your suspicion or that based on something that you have a recollection of them saying to you as you sit here today?
>
> A. What was said to me -- I guess I am implying it from the way it was presented to me. "Well, we don't want to -- I guess we don't want to totally ignore India, but we don't want her to have whatever is left in full." The implication being that they gave some thought to not leaving her anything at all.

Woodruff Burt deposition
Page 65, lines 13-18

> Q. Is there any doubt in your mind that Tom and Ida Lou's intentions were properly set forth in the documents that they executed in your office?
>
> A. No. I am absolutely convinced that the documents reflected their intentions.

Discovery is closed. No witnesses have come forward that state that Thomas Ennenga instructed Lowell Stortz or Woodruff Burt to draft the paragraph other than the way it was drafted. As stated in *Celotex Corp. v. Petratt,* 477 U.S. 317, 325, 106 S.Ct. 548, 2554, 91 L.Ed.2d 265 (1986), "Instead, as we have explained, the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the District Court, that there is an absence of evidence to support non-moving party's case."

Thomas Ennenga not only instructed Lowell Stortz and Woodruff Burt as to how he wished his trust document to be drafted, he gave the reasons for his instructions. India Ennenga has greater wealth through her mother than the wealth available to the other grandchildren.

Woodruff Burt deposition
Page 39, lines 3 -
Page 40, line 5

> Q. Well, I hope I have, but be that as it may, tell me why it is that you think I am wrong?
>
> A. I also stumbled when I read this, but I knew absolutely what Tom and Ida Lou had told me.
>
> And they told me on more than one occasion that they -- the way they typically got into it was that India's grandmother and her mother came from a family with a great deal of money.
>
> And I suspect at one point they may have considered not leaving anything to India, but at any rate when they spoke to me, they said, "We don't want to totally ignore her, but we don't want to leave George's -- whatever is left of George's just to India. She doesn't need the money so much as our other grandchildren will need it."
>
> Q. You said you suspect they may have considered not leaving India anything. Is that your suspicion or that based on something that you have a recollection of them saying to you as you sit here today?
>
> A. What was said to me -- I guess I am implying it from the way it was presented to me. "Well, we don't want to -- I guess we don't want to totally ignore India, but we don't want her to have whatever is left in full." The implication being that they gave some thought to not leaving her anything at all.

Plaintiff has not brought forth any evidence which contradicts the reasoning assigned by Thomas Ennenga for the per capita distribution specified in Sec. 8.B.21.c. Further, Plaintiff has produced no witnesses to contradict the fact that Thomas and Ida Louise Ennenga were under the belief that India is due to inherit significantly more assets from her mother's side of the family than are likely to be available to his other grandchildren. Thomas and Ida Louise Ennenga were highly intelligent, mature and experienced people who considered their options; made their choices; and instructed counsel accordingly.

Woodruff Burt deposition
Page 64, lines 23 -
Page 65, line 9

> The Witness: I would only like to make one brief statement, which he can ignore if he wants to, but Tom and Ida Lou Ennenga were extremely intelligent people experienced in life.
>
> Tom was a graduate of Princeton. Ida Lou was a graduate of Swarthmore. Ida Lou was reported to have a photographic memory and I believe she did.

Not treating one's natural bounty equally is not a reason to invalidate a will or to presume the will or trust did not evidence the testator's intent. As stated by the Illinois Supreme Court in *Logsdon v. Logsdon,* 412 Ill. 19, 26, 104 N.E.2d 622, 625 (1952), "Unreasonable prejudice against the natural object of one's bounty is not ordinarily ground for invalidating a will. The testator has the unquestioned right to dispose of his property as he thinks best, and the fact that it is divided unequally between those who have claims on his bounty does not necessarily impair the validity of the will." As further stated in *Sterling v. Dubin,* 6 Ill.2d 64, 74, 124 N.E.2d 718, 724 (1955), "It is well settled that one who is capable of transacting ordinary business affairs in which his interests are involved is capable of making a valid will. Sickness and infirmity alone do not show lack of testamentary capacity nor is unreasonable prejudice against the natural object of his bounty ordinarily a ground for invalidating a will." One can be prejudiced against some of his children or his grandchildren. The fact that Thomas Ennenga did not treat his grandchildren the same, is not a ground for invalidating the trust document or rewriting the provision. "Prejudice of the testator against a relative is not ground for setting aside a will, unless it can be explained upon no other ground than that of an insane delusion. A person may be prejudice against some of his children or persons who are the natural objects of his bounty and make unfair remarks about them without having a proper foundation for his conduct, but it does not necessarily follow that he is without testamentary capacity. Unreasonable prejudice against relatives is not ordinarily ground for invalidating a will. That can only be done when the testator's aversion is shown to be the result of an insane delusion, his conduct not being able to be explained on any other

-7-

ground, "*Noone v. Olehay,* 297 Ill. 160, 166-67, 130 N.E.476 (1921). Thomas Ennenga was intelligent and of sound mind (not disputed by plaintiff). He expressed a valid reason for the unequal treatment of his grandchildren. Treating the grandchildren unequally is not evidence that Thomas Ennenga's intent was not followed.

### III.
### Extrinsic evidence is not allowed when the trust language is unambiguous.

Plaintiff is asking this court to find that Sec. 8.B.2.c. did not express the intent of Thomas Ennenga. Not only has no evidence been produced that Thomas Ennenga instructed the attorneys differently than the clear language of the trust; but also, when the language is unambiguous, no extrinsic evidence is allowed.

The trust agreement language is not ambiguous and in need of rewriting by the court simply because the plaintiff says so, "A term is not rendered ambiguous simply because one party asserts it to be so. *Johnstowne Centre Partnership v. Chin,* 99 Ill.2d 284, 288, 76 Ill.Dec. 80, 458 N.E.2d 480, 481 (1983) (a contract 'provision is not rendered ambiguous simply because the parties do not agree on its meaning'), nor does the lack of a definition of a term in an insurance policy render that term ambiguous. *Harleysville Mutual Insurance Co. v. Packer,* 60 F.3d 1116, 1121 (4th Circuit 1995); 11 R. Lord Williston on Contracts, Sec. 30:4 (4th Ed. 199) ('ambiguity does not necessarily exist simply because a contract requires interpretation or fails to define a term')," *William J. Templeman Co. v. Liberty Mutual Ins. Co.,* 316 Ill.App. 379, 390, 735 N.E.2d 669, 679, 249 Ill.Dec. 65, 75 (Ill.App. 1 Dist. 2000). In addition the construction and interpretation of a contract or will is a question of law and, therefore, there is no relevance to any expert witness hired by the plaintiff to interpret the intent of the testator. As stated in *Templeman,* 316 Ill.App.3d at 390, 735 N.E.2d at 679, 249 Ill.Dec. at 75, "Finally, as the construction and interpretation of an insurance policy is a

question of law, we fail to see the relevance of plaintiffs' expert witness. *Lapham-Hickey Steel Corp. v. Protection Mutual Ins. Co.*, 166 Ill.2d 520, 529, 211 Ill.Dec. 459, 655 N.E. 842, 846 (1995) ('The construction of an insurance policy and its provisions is a question of law'); *McDonald's Operators Risk Management Ass'n, Inc. v. Coresource, Inc.*, 307 Ill.App.3d 187, 191, 240 Ill.Dec. 392, 717 N.E.2d 485, 488, (1999) (Existence of an ambiguity in an insurance policy is a question of law for the court)." The construction of a will or trust document follows the same rules as for the construction of a contract. *Estate of Romanowski*, 329 Ill.App.3d 769, 776, 771 N.E.2d 966, 972, 265 Ill.Dec. 7, 13 (Ill.App. 1 Dist. 2002), "The rules governing the admission of extrinsic evidence to aid in the construction of a will are well settled in this State. The crucial determination in each case being whether as a matter of law the will is ambiguous, necessitating extrinsic evidence [citation] *In Re Estate of Giganti*, 231 Ill.App.3d 828, 831, 173 Ill.Dec. 345, 596 N.E.2d 1224 (1992). The same rule applies to contracts. *Chicago Investment Corp. v. Dolins*, 93 Ill.App.3d 971, 49 Ill.Dec. 415, 418 N.E.2d 59 (1981). In Illinois, contract interpretation follows the 'four corners' doctrine, so that we look only to the language of the contract to determine if it is susceptible to more than one meaning. *Air Safety, Inc., v. Teachers Realty Corp.*, 185 Ill.2d 457, 462, 236 Ill.Dec. 8, 706 N.E.2d 882, 885 (1999). A party does not create an ambiguity and thereby open the door to extrinsic evidence merely by offering evidence that the testator did not intend to say what is otherwise clearly stated in a will. *Coussee v. Estate of Efston*, 262 Ill.App.3d 419, 425-26, 199 Ill.Dec. 19, 633 N.E.2d 815 (1994)."

The trust document provided an unambiguous distribution to India Ennenga. Plaintiff seeks to show by expert "interpretation" that the testator must have meant something other than what was clearly expressed. Not only is expert evidence not appropriate for interpreting contract language and attempting to create an ambiguity; but also, when the document is unambiguous, no extrinsic evidence is allowed to attempt to prove the testator's intent. As

stated in *Romanowski*, 329 Ill.App.3d at 777, 771 N.E.2d at 973, 256 Ill.Dec. at 14, "Therefore, because the short form was in writing and was unambiguous, Genevieve's purported oral assent is not admissible evidence to establish her intent that Evelyn have authority to name contingent beneficiaries to the trust. For these reasons, we hold that the trial court properly granted summary judgment to the estate."

WHEREFORE, it is respectfully requested that this court enter an order granting summary judgment to Woodruff Burt for the reason that there is no issue as to any material fact and Woodruff Burt is entitled to judgment as a matter of law.

        WOODRUFF A. BURT, Defendant

BY:   MATEER & ASSOCIATES
      His Attorneys

BY:   _____
          DON M. MATEER

DON M. MATEER
MATEER & ASSOCIATES
401 W. State St., Suite 400
Rockford, IL 61101
815/965-7745
WOODRUFF A. BURT