IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| George Ennenga, individually, and as Father and Next Friend of India Ennenga, a minor, | ) ) ) ) | No. 06 C50117 Judge Frederick J. Kapala |
| Plaintiffs, | ) ) | |
| vs. | ) ) ) | **MEMORANDUM IN SUPPORT OF DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT** |
| Byron E. Starns, Lowell W. Stortz, Leonard, Street and Deinard, Woodruff A. Burt and Snow, Hunter, Whiton and Fishburn, Ltd., | ) ) ) ) ) | |
| Defendants. | ) ) | |

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

STATEMENT OF THE CASE ................................................................................... 4

STATEMENT OF UNDISPUTED FACTS ............................................................... 7

ARGUMENT ............................................................................................................. 7

    I.      LEGAL STANDARDS .............................................................................. 7

          A.      SUMMARY JUDGMENT STANDARD ......................................... 7

          B.      STANDARD FOR PROVING LEGAL MALPRACTICE .............. 8

    II.     PLAINTIFF CANNOT PRODUCE A FACTUAL BASIS FOR HER CLAIM THAT THE ESTATE PLAN WAS NEGLIGENTLY DRAFTED ................................................................................................. 8

          A.      INDIA AND HER FATHER LACK ANY KNOWLEDGE OF WHAT THE ENNENGAS TOLD THE LAWYERS TO DO ..................................................................................................... 9

          B.      THE DOCUMENTARY RECORD LEAVES NO DOUBT AS TO THE ENNENGAS' INTENT. ........................................... 10

          C.      PLAINTIFF TACITLY ADMITS IN INTERROGATORY RESPONSES THAT SHE HAS NO EVIDENCE OF PROFESSIONAL NEGLIGENCE ................................................. 14

    III.    PLAINTIFF'S DAMAGES CLAIM IS SPECULATIVE AND UNRIPE ..................................................................................................... 18

    IV.    INDIA SHOULD BE PRECLUDED FROM PURSUING A $5,718,990 DAMAGES CLAIM THAT SHE HAS FAILED TO DOCUMENT ............................................................................................. 20

    V.    PLAINTIFF'S EXPERT OFFERS ONLY SPECULATION AND HIS REPORT LACKS A VALID FACTUAL FOUNDATION ................ 21

CONCLUSION ......................................................................................................... 24

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986)................................................8

*Blue Water Corp. v. O'Toole*, 336 N.W.2d 279 (Minn. 1983)............................................9

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986)................................................................7

*Chapman v. Maytag Corp.,* 297 F.3d 682 (7th Cir. 2002) ...............................................23

*Greene v. First Nat'l Bank*, 516, N.E.2d 311 (Ill. Ct. App. 1987)......................................9

*Herrmann v. McMenomy & Severson*, 590 N.W.2d 641 (Minn. 1999) ............................19

*Insolia v. Phillip Morris, Inc.,* 216 F. 2d 596 (7th Cir. 2000)............................................8

*Lucey v. Law Offices of Pretzel & Stouffer, Chtd.*, 703 N.E.2d 473 (Ill. Ct. App. 1998) ...............................................................................................................................19

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574 (1986) ...........8

*Merit Motors, Inc. v. Chrysler Corp.,* 569 F.2d 666 (D.C. Cir. 1977)...........................24

*Mid-State Fertilizer v. Exchange Nat'l Bank,* 877 F.2d 1333 (7th Cir. 1989)................24

*Owens v. McDermott, Will & Emery*, 736 N.E.2d 145 (Ill. Ct. App. 2000) .......................8

*Porter v. Whitehall Labs. Inc.,* 9 F.3d 607 (7th Cir.1993) ...............................................24

## Federal Statutes and Rules

Fed. R. Civ. P. 56(c) .........................................................................................................7

Fed. R. Civ. P. 56(e) .........................................................................................................7

Fed. R. Evid. 602 ............................................................................................................16

Fed. R. Evid. 802 ............................................................................................................16

Fed. R. Evid. 803(3) ........................................................................................................17

**INTRODUCTION**

In this case plaintiff India Ennenga, a minor ("India"), through her father George Ennenga ("George"), complains she may not, in the future upon George's death, receive enough money under her grandparents' will. The complaint on its face is premature because all of her grandparents' estate went to her father and two aunts, and India will not know how much she receives, if anything, until her father dies, at which time she is to receive a share of the remainder of his spendthrift trust. Because of that unresolved question, this action is entirely speculative and not ripe for adjudication.

There are even more serious problems with the complaint, on the merits, which gives rise to this motion. The action is entirely unfounded as a matter of fact, and should be properly dismissed now that India has had full opportunity for discovery. This case was entirely dismissed on the merits by Judge Reinhard in January, 2007. Plaintiffs were allowed to re-file, and then three of the four counts of the complaint were dismissed on a Rule 12 motion in December, 2007 by Judge Kapala, including all claims brought directly by George. The Court allowed India's sole remaining claim to proceed solely on the narrow legal theory that the attorney defendants who prepared the estate plan did so negligently, and failed to follow the grandparents' intent in the estate plan. Although India was granted this slim reed to continue with her case through discovery, she had no chance to prevail because she had, and has, no evidence that the estate plan was erroneously drafted.

After completion of discovery, the evidence establishes that:

1.     The grandparents intended to divide their estate equally between their two daughters (Connie and Lucie) and one son (George), but were concerned about George's spending.   Because of that concern, they established a spendthrift trust for him that limited his use of the trust funds to certain types of uses and vested control of the trust in an independent trustee.   Upon George's death, the grandparents intended that any remainder of his trust be equally divided amongst all their grandchildren.   In particular, they knew that the other side of India's family was quite wealthy, and thus India would be well provided for and did not need the entire remainder, if any, of her father's trust. They did not impose similar limitations on the use of their gifts to their daughters, Connie and Lucie.

2.     The grandparents intent, described above, is meticulously well documented in meeting notes and letters between defendant attorney Lowell Stortz ("Stortz") and the Ennengas.   In particular, in May 2000, Stortz wrote a detailed letter describing an estate plan that included the spendthrift trust for George and provided that the remainder of that trust would be distributed "in part to India and the balance in equal shares to their other grandchildren."   The grandparents read the letter and confirmed to Stortz that the letter properly described their intent.   Stortz wrote a second letter in July, 2000, which described in detail all the elements of the estate plan ultimately signed by the grandparents.  After review of the documents with a second lawyer, defendant Woodruff Burt ("Burt"), the grandparents signed the estate plan documents, again evidencing their agreement with the contents.

3.     In discovery, India was required to disclose her factual basis for contending the estate plans were erroneously drafted.  As will be plain to the Court upon review, India's response consisted entirely of irrelevant allegations of hearsay conversations with the grandparents in which they allegedly made vague and equivocal statements to George about treating people "fairly."  Significantly, India did not disclose a single alleged statement (admissible or not) in which either grandparent is alleged to have described the contents of their estate plan, let alone state that their intent at the time they signed the estate plan was different from what is written in the estate plan.

4.     India also has entirely failed to establish a case for damages.  As explained above, India does not even know whether there will be any remainder to her father's trust, let alone what her share would be -- or what her share might have been had she been provided the entire remainder – and assuming George dies before she does.  Indeed, the recent events in the real estate and financial markets demonstrate that any effort to quantify the value of that remainder, which is entirely dependent on markets, George's longevity and George's use of the corpus of the trust, is entirely speculative.

5.     Beyond the conceptual speculativeness of any damage claim, India in fact has failed even to speculate about her damages.  In response to contention interrogatories requiring disclosure of damages calculations and all supporting documentation, India disclosed no supporting documentation of any kind, and offered a rambling, incoherent narrative that was clearly drafted by George with no involvement from counsel or any damages expert or professional.  Discovery is now closed and it is clear India has not disclosed any factual basis to proceed to trial on a damages claim.

In summary, India has no personal knowledge of any factual basis for the allegations of negligence, as she had no participation in the preparation of the estate plan. The undisputed testimony and documentary record of the lawyers who actually worked with the grandparents on the estate planning documents, however, demonstrate that the estate planning documents properly implemented the grandparents' intent. India offers only unsupported conjecture to the contrary. Consequently, Defendants[1] request that the Court dismiss the last remaining count of the Complaint and put this matter to rest.

## STATEMENT OF THE CASE

In 2006, George Ennenga, on his own behalf, and as father and next friend of India Ennenga, a minor, brought this action alleging four counts against the Minnesota law firm of Leonard, Street and Deinard Professional Association ("Leonard, Street") and two of its attorneys, Byron E. Starns ("Starns") and Lowell V. Stortz ("Stortz"), and against the Illinois law firm of Snow, Hunter, Whiton and Fishburn ("Snow")[2] and one of its attorneys, Woodruff A. Burt ("Burt"). The claims were for professional negligence, breach of fiduciary duty, aiding and abetting a breach of fiduciary duty, all in relation to the preparation of an estate plan for Thomas and Ida Louise Ennenga -- George's parents and India's grandparents -- and in the administration of a trust in which Starns was trustee.

---

[1] Defendants Leonard, Street and Stortz bring this motion. Defendant Starns believes he has previously been dismissed from this action. The only claim of the Complaint allegedly involving his conduct related to his administration of a trust. That claim was dismissed in the Court's December 14, 2007 ruling. To the extent the Court finds that Starns still remains a party to this action, Starns joins in this motion.

[2] Snow has since been dismissed.

In a decision issued January 17, 2007, Judge Philip G. Reinhard dismissed all claims of the Complaint. Affidavit of Keith S. Moheban [Moheban Aff.], Exhibit A. The Court held that all of the plaintiffs' claims centered on the allegation of "legal malpractice because of a known and unresolved conflict of interest.[3]" *Id.* at 2. The Court held that under either Minnesota or Illinois law there was no conflict of interest in the transaction. The Court thus rejected, as a matter of law, all of plaintiffs' claims.

The Court did allow plaintiffs to refile their Complaint, and specifically stated:

> To state a claim, Ennenga must allege, in pertinent part, that Ida and Thomas entered into the attorney-client relationship with the purpose of benefitting Ennenga and that they intended Ennenga to receive more under the estate plan than Ennenga ultimately received, but that the attorney defendants were negligent in not carrying out that intent.

*Id.*

The plaintiffs thereafter filed an amended Complaint[4] alleging legal malpractice with respect to preparation of estate planning documents and also breach of fiduciary duty with respect to administration of a trust related to the Ennenga estate plan by Defendant Starns.

Specifically, plaintiffs alleged that the defendants committed legal malpractice by their alleged failure to effectuate the intent of the Ennengas because India believes "her grandfather did not intend to give her a reduced, 1/7th share of her father's trust when he was not giving the other Ennenga grandchildren . . . similar shares of their parents' trusts"

---

[3] The claimed conflict was that Starns' wife, Connie, is a daughter of the Ennengas. The Court properly held that the Rules of Professional Conduct expressly allow a law firm to prepare an estate plan for a family member of an attorney in the firm -- it also was true that Starns had absolutely no involvement in the preparation of the estate plan.

[4] This was actually the Second Amended Complaint filed by Plaintiffs.

Moheban Aff. Ex. B ¶ 19.  The Complaint did not discuss the facts that: (1) all grandchildren received exactly the same treatment under the estate plan, and that (2) the other grandchildren's parents were not subject to spendthrift trusts so there was no remainder for them to share.

In March, 2007, all defendants filed motions to dismiss pursuant to Rule 12(b)(6). On December 14, 2007, Judge Kapala dismissed Counts II, III and IV of the Complaint. Moheban Aff. Ex. C.  In particular, the Court held that the statute of limitations barred Count II, and the doctrine of *res judicata* barred Count III and Count IV.  George Ennenga had previously litigated and did not prevail on his claims relating to the trust administration.

With respect to the remaining Count I, the Court held that, for purposes of a Rule 12 Motion, "the Court accepts as true plaintiffs' allegations that Thomas did not intend to discriminate against India and, in fact, intended to treat her equally with all his grandchildren."  Thus, the Court has held that the Complaint states a claim, but the Court up to this point has not ruled as to whether there was a sufficient factual basis for the claim to proceed to trial.

Significantly, the estate plan does in fact treat India equally with all the other grandchildren.  Each grandchild receives the same amount under the estate plan -- an equal share of the remainder of George's spendthrift trust.  The estate plan gives nothing more to any of the other grandchildren than what India receives.

**STATEMENT OF UNDISPUTED FACTS**

Defendants' Statement of Undisputed Facts pursuant to Local Rule 56.1 is submitted as a separate document in support of this motion.

**ARGUMENT**

**I.     LEGAL STANDARDS.**

**A.     Summary Judgment Standard.**

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  In seeking a grant of summary judgment, the moving party must identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the nonmoving party's case." *Id.* at 325.  Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but must "by affidavits or as otherwise provided for in this rule set out specific facts showing a genuine issue for trial.' Fed. R. Civ. P. 56(e).

A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Rather, a genuine issue of

material fact exists when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *Insolia v. Phillip Morris, Inc.,* 216 F. 2d 596, 599 (7th Cir. 2000).

**B.      Standard for Proving Legal Malpractice**.

To bring a successful claim for legal malpractice, the plaintiff must prove: (1) the existence of an attorney-client relationship; (2) the existence of acts constituting negligence or breach of duty; (3) that such acts were the proximate cause of the Plaintiffs' damages; and (4) actual damage. *See Owens v. McDermott, Will & Emery*, 736 N.E.2d 145, 155 (Ill. Ct. App. 2000); *Blue Water Corp. v. O'Toole*, 336 N.W.2d 279, 281 (Minn. 1983).[5]

Courts will find no cause of action for legal malpractice where a beneficiary, who is simply disappointed with her share, fails to show any negligence on the part of the testator's attorney that frustrated the testator's intent. *Greene v. First Nat'l Bank*, 516, 517- 18 N.E.2d 311 (Ill. Ct. App. 1987).

**II.      PLAINTIFF CANNOT PRODUCE A FACTUAL BASIS FOR HER CLAIM THAT THE ESTATE PLAN WAS NEGLIGENTLY DRAFTED**.

India has now had a full opportunity to develop facts to support her allegations, but has entirely failed to show the existence of facts sufficient to allow this case to proceed to trial.  To prove a breach of duty in representing the Ennengas, India must

---

[5] This is a diversity action such that state law applies as to the substantive law of legal malpractice.  For purposes of this motion, Defendants believe the laws of Minnesota and Illinois both require Plaintiff to prove elements of breach and damages that Plaintiff has been unable to prove.  Consequently, the case can be properly dismissed under the law of either state.

show that the estate plan does not reflect the Ennengas' intent as expressed to the attorneys who prepared the plan.   In particular, the record now demonstrates that:

1.      India and her father have no personal knowledge as to what Thomas and Ida Louise told Stortz to do in drafting their estate plan.

2.      In response to contention interrogatories, India could not identify any valid factual basis for her allegation that the estate plan did not reflect  the intent of Thomas and Ida Louise as expressed to their attorneys.

3.      Plaintiff's expert offers only conjecture and fails to support a  valid claim of negligence.

4.      India entirely fails to establish causation or damages – as it remains unknown what, if any, portion of the estate might become available to India upon the death of her father.

5.      To the extent India has asserted a damages claim of $5,718,990, India has entirely failed to produce documentation of the claim in response to discovery requests, and should be precluded from any damages recovery as a result.

**A.      India And Her Father Lack Any Knowledge Of What The Ennengas Told The Lawyers To Do**.

Although India and her father may be disappointed in her potential share of the estate, they must concede they have no personal knowledge that the estate plan was negligently drafted.  This is indisputable because India and her father were not involved in any of the discussions between the Ennengas and their attorneys.   India and her father do not know what the Ennengas told their attorneys to do with the estate plan.  Consequently, they have no factual basis to contend the estate plan prepared by the defendant attorneys and signed by the Ennengas was anything other than what the Ennengas intended.

India and her father may assert that one or the other of the Ennengas told them, at various times, of different intentions. It may be true that, at various times the Ennengas had different ideas or intentions about their estate plan. Indeed, the defendant attorneys were retained to *revise* the estate plan. It also may be true that, at times, the Ennengas told George something different from what their actual intentions were -- they may have sought to placate him or avoid conflict. None of those statements have any relevance to the question at hand, which is "what did the Ennengas tell the lawyers to do?" As to that question, the documentary record meticulously records what they told the lawyers -- which is entirely consistent with the ultimate estate plan.

## B. The Documentary Record Leaves No Doubt As To The Ennengas' Intent.

No fewer than eight (8) separate documents establish the Ennengas' intent as expressed to their attorneys. These documents from beginning to end consistently recite two major elements of the estate plan: (1) George would receive his 1/3 share of the estate via a spendthrift trust, and (2) any remainder of that trust would be divided equally amongst all the grandchildren. In light of the overwhelming documentary evidence of these two provisions, India cannot continue to claim the intent was otherwise.

As set forth in more detail in the statement of undisputed facts, the Ennengas' intent to put George's share in trust and divide the remainder equally to all grandchildren is found in Stortz's notes of his first meeting with the Ennengas in April, 2002. Ex. E. His notes indicate that upon George's death India would receive "an amount equal to one-seventh to her" from George's share. *Id.* at 4.

Stortz confirmed these two elements of the estate plan in a letter to attorney Burt on May 5, 2000. Ex. F at 1-2.  Burt wrote back on May 18, indicated he had spoken to the Ennengas, and confirmed to Stortz:  that "we are in agreement on at least some of the fundamentals, specifically: . . . **George's share is to remain in trust for his life.  He should receive the income . . . [U]pon his death the remaining principal and undistributed net income are to be divided, per capita, among the settlors' grandchildren**." *Id.* at 1 (emphasis supplied).  The Ennengas were copied on this letter. *Id.*

On May 20, 2000, Thomas Ennenga wrote a letter to Lowell Stortz with a copy to Burt.  Moheban Aff., Ex. H.  Thomas stated:

> We have reviewed the W.A. Burt letter to you.  We believe it outlines our intentions quite clearly.

*Id.*

On July 13, 2000, Stortz wrote a letter to the Ennengas that again in much more detail described the terms of the estate plan that he prepared for them.  Moheban Aff., Ex. I.  He explained that the estate plan involved preparing individual wills for each of the Ennengas individually, and providing that ultimately the estate of the last spouse to die would transfer into a family trust and marital trusts.  Stortz then explained that:

> After the death of the surviving spouse, the Family Trust and Marital Trust will be divided into three equal shares, one share for each of your children. Assets exempt from the GST tax will be transferred to a trust for George and administered for the rest of his life.  During George's lifetime, he will receive five percent (5%) of the trust value every year.  **At George's death, his trust will be divided into equal shares, one share for each of your grandchildren and administered for their benefit until age thirty.**

*Id.* at 5 (emphasis supplied).   This letter also was copied to Burt. *Id.*

On June 21, 2000, Stortz wrote a memorandum to the file describing the specifics of the estate plan. In this memorandum, Stortz wrote:

> They have three children, Constance Starns, Lucie Gadenne and George Ennenga. After both spouses have died, split the estate into three shares for the children. Assets exempt from the generation-skipping transfer tax should be used such that the one-third share set aside for George is exempt from the generation-skipping transfer tax. Any remaining exempt assets should be split equally between a trust for Connie and a trust for Lucie. To the extent that the shares for Connie and Lucie exceed the amounts exempt from the generation-skipping transfer tax, the excess should be distributed outright to them.

Moheban Aff., Ex. J at 1.

With respect to George's share, Stortz wrote:

> **On George's death, his share will be split equally among the grandchildren of Thomas and Ida Lou Ennenga**. With a share for a deceased grandchild being divided for such deceased grandchild's issue by right of representation.

*Id.* at 2 (emphasis supplied).

On August 8, 2000, Thomas and Ida Lou executed estate planning documents, including Last Will of Thomas Ennenga, the Last Will of Ida Louise Ennenga, and two Revocable Trust Agreements. In Section 8(B)(2)(c), the Revocable Trust provides that:

> At George Ennenga's death, or if he predeceases the survivor of my spouse and me, the Trust shall **divide George's Trust into as many equal shares as shall be necessary to allocate one trust share for the benefit of each grandchild** of mine who is then living, and one trust share for the benefit of the then living issue, collectively, of the deceased grandchild of mine.

Moheban Aff., Ex K at 14 (emphasis supplied). This document is signed before a notary by Thomas Ennenga. *Id.*

The documentary record thus is meticulous, consistent, and establishes the Ennengas' intent to have a spendthrift trust for George and to divide any remainder among all the grandchildren equally. There was no error in the estate plan. Thomas Ennengas signed the Revocable Trust document, which is *prima facie* evidence that the agreed with its terms.

Beyond the question raised about the treatment of George's share, India has at times suggested that she should have been entitled to some portion of the shares of the estate given to her two aunts, Connie and Lucie, in the manner that her cousins receive a portion of her father's share. This claim is conceptually impossible. The same documents discussed above make clear that only George's share was to be protected in a spendthrift trust. The shares given to Connie and Lucie by the Ennengas were made in a manner that the Ennengas retained no control over how Connie and Lucie disposed of their shares. Consequently, the Ennengas never sought to control how their daughters used their shares, and there was no mechanism in the estate plan that would place any stipulation as to how the daughters ultimately disposed of their shares.

To the extent India contends she was to be treated equally with the other grandchildren, she has been treated equally. Each grandchild gets an identical share of the estate -- an equal share of any remainder of George's trust. No grandchild gets more. To the extent India believes she should have received all of the remainder of her father's share, her grandparents expressly took into account the fact that India's other grandparents were quite wealthy and that she would be well provided for by them. Ex. D at 31.

### C. Plaintiff Tacitly Admits In Interrogatory Responses That She Has No Evidence Of Professional Negligence.

India was pressed in discovery to disclose the factual basis of her claim that the estate plan did not reflect her grandparents' intent. Her response to the discovery reveals the factual insufficiency of her claim. Moheban Aff., Ex. L. The interrogatory answers fail to provide any relevant, competent or probative evidence in support of Plaintiff's claims. In particular, Plaintiff was asked to:

**Interrogatory No. 2:**

**State all facts and identify all documents that support, refute or otherwise relate to your contention, set forth in paragraph 19 of your Complaint that "Plaintiff is therefore informed and believes and alleges herein that her grandfather did not intend to give her a reduced 1/7 share of her father's trust when he was not giving the other Ennenga grandchildren (Starns children and Gadennes children) similar shares of their parents' trusts:"**

Ex. O at 1.

Plaintiff's lengthy and rambling response is not replicated here, but is set forth in detail in Moheban Affidavit, Ex. M, along with a point by point explanation as to why each claimed piece of evidence fails to create a material disputed issue of fact. In general, Plaintiff's evidence is comprised of alleged hearsay conversations between George and his mother, or George and third parties. This evidence suffers from a variety of fatal infirmities.

First, all of the alleged conversations are irrelevant because not a single one purports to be a statement by the Ennengas about the specific terms of the Ennengas' estate plan. For example, Plaintiff alleges the following:

**The grandparents, Thomas and Ida Louise Ennenga, parents to George, stated repeatedly over many years that they believed in fair and balanced treatment to children and grandchildren. They stated they believed in education trusts, because the children, George, Connie and Lucie, had such same educational trusts, managed by Northern Trust. Both grandparents repeatedly stated their love of and appreciation for India. They repeatedly confirmed her inclusion in their Trusts.**

Ex. L at 1.

These statements are equivocal, vague and are not probative of any intent with respect to India's share of their estate. The statements do not even mention the estate plan terms at issue in this case, i.e., the spendthrift trust for George or how any remainder should be divided. To the extent they profess a desire by the Ennengas to be fair, the documentary establishes that they believed their equal sharing of the remainder would be fair, particularly to India who would be well cared for by her wealthy grandparents on the other side of the family.

Secondly, the alleged conversations are incompetent to the extent they involve alleged conversations between third parties who had no involvement in the preparation of the estate plan. For example, Plaintiff alleges a conversation between George and his sister Connie:

**"On or about this time period, George spoke to Connie Starns directly and frankly about this sharing issues. George knew Connie was talking to Parents as well. George asked Connie:**

| | |
|---|---|
| **QUESTION:** | **'this is all being done in fairness, Right?? I get 1/3, you get 1/3 and Lucie too?** |
| **ANSWER:** | **'yes of course'** |
| **QUESTION:** | **'and my children get my 1/3? India will have her mother's money but fair is fair?** |

| | | |
|---|---|---|
| **ANSWER:** | 'oh yes' | |
| **QUESTION:** | 'now let's be sure here . . . I've only one child and you and Lucie have 3, but India get's my share . . . we're not splitting it up in any other way? | |
| **ANSWER:** | 'no of course not . . . its 1/3 each.' | |
| **QUESTION:** | 'after all, my children are not less important than yours?? Right  Fair is fair??' | |
| **ANSWER:** | 'Absolutely'  the children get our (individual 1/3 splits" | |

Ex. L at 2.

Setting aside the overwhelmingly self-serving nature of this statement, which also is inadmissible hearsay, a conversation between two heirs, neither one of which were privy to the conversations between the Ennengas and the lawyers, has no probative value in determining the Ennengas' intent.  This allegation does not present admissible testimony creating a material disputed issue of fact. Fed. R. Evid. 602 ("a witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter").   Connie Starns is not alleged to have personal knowledge of what the Ennengas told Stortz to do with the estate plan, nor could she have such knowledge.

Third, the statements are inadmissible as hearsay under Fed. R. Evid. 802, which prohibits out of court statements offered for proving the truth of the statement.  In this case, these statements could only be relevant if offered to prove the assertion that the Ennengas intended an estate plan different from what was actually written (as noted above, the statements in fact do not directly reference the terms of the estate plan at all).

Although Plaintiff may attempt to rely on a hearsay exception, Fed. R. Evid. 803(3), this exception on its face prohibits "a statement of memory or belief to prove the fact remembered or believed unless it relates to . . . terms of declarant's will." Because the disclosed statements do not discuss the terms of the declarant's will, but only allegedly reference the declarant's "intent" at the time of the statement, the exception does not apply and all this purported evidence is inadmissible.

In sum, and as set forth in more detail in Exhibit M, Plaintiff offers a series of irrelevant, equivocal and largely inadmissible statements of various parties. Many of the statements are entirely irrelevant, having nothing at all to do with the estate plan. Some of the statements are incompetent, as they are statements by people other than Thomas and Ida Louise purporting to state the substance of their intent for their estate plan. None of the statements offered are statements between Thomas and Ida Louise, on the one hand, and Stortz and Leonard, Street, on the other hand, in which Thomas and Ida Louise instruct Stortz how to prepare their estate plan. Consequently, none of the offered statements could possibly demonstrate that the estate plan does not reflect Thomas and Ida Louise's intentions, as expressed to Stortz and Leonard, Street.

Consequently, based on: (1) Thomas Ennenga's signature on the Revocable Trust Agreement, (2) the documentary record establishing the Ennengas' intent consistent with the estate plan, and (3) Plaintiff's failure to establish facts that create a material fact dispute as to the Ennengas' intent, Plaintiff's claim should be dismissed with prejudice.

## III. PLAINTIFF'S DAMAGES CLAIM IS SPECULATIVE AND UNRIPE.

The essence of India's claim is that she should have received the remainder of her father's trust all for herself, and not shared with the other grandchildren. Even assuming that she could prove entitlement to the entire remainder, and not only a one-seventh share as currently would be the case given that there are seven grandchildren, a jury could not award plaintiff monetary damages. The amount of her claimed difference in share is entirely speculative and uncertain at this time. The case simply is not ripe for adjudication.

Minnesota and Illinois law are settled that a malpractice claim does not accrue when the claim is premised on the mere possibility of harm. *See, e.g., Herrmann v. McMenomy & Severson*, 590 N.W.2d 641, 643 (Minn. 1999) (proof of damage required to allege malpractice); *Lucey v. Law Offices of Pretzel & Stouffer, Chtd.*, 703 N.E.2d 473, 477 (Ill. Ct. App. 1998) ("where the mere possibility of harm exists or damages are otherwise speculative, actual damages are absent and no cause of action for malpractice yet exists."). In *Lucey*, the Illinois Court of Appeals affirmed the dismissal of a client's malpractice action on grounds that it was premature because damages remained speculative. The client had sought legal advice regarding the propriety of soliciting his employer's customers prior to his resignation. In reliance on his attorney's advice, the client solicited and later obtained a large customer of his former employer. The former employer sued. While that action was pending, the client brought a malpractice action against the attorney from whom he had received the allegedly negligent advice. The malpractice action was dismissed as premature, however, because the underlying

litigation with the former employer was unresolved. Until that litigation was resolved, the court reasoned, the client had not yet suffered any damages and thus no cause of action for malpractice existed. *Id*. at 476.

In the present case, as an initial matter, it is entirely unknown what amount, if any, of the trust corpus will be available as a remainder portion upon George's death. George presumably is making the periodic withdrawals from the corpus that he is allowed to take under the spend-thrift provisions of the trust. In addition, the Trustee is authorized to make unlimited additional withdrawals, including potentially the entire trust corpus, for "emergency health care" or "emergency support" in the sole discretion of the Trustee. Ex. K at 8.B.2b. Beyond that, the value of the assets of the trust may fluctuate substantially over time. Certainly, given the events of the last several months in the real estate and financial markets, it should be well understood that no one could determine now what the value of the remainder of the trust may be at some unknown time in the future when George dies.

Between the possibility that George may use up all or a good portion of the trust corpus and the potential rise and fall in value of the assets, along with the possibility that India could die before George without issue (in which case she would receive no portion of the remainder irrespective of he allowed share), there is no reasonable basis by which a jury could award India any monetary amount as claimed damages in this action.

Notably, India entirely fails to address this issue in her response to Interrogatory No. 9, which is a contention interrogatory requiring India to provide all calculations of damages. Ex. L.

# IV. INDIA SHOULD BE PRECLUDED FROM PURSUING A $5,718,990 DAMAGES CLAIM THAT SHE HAS FAILED TO DOCUMENT.

Although India has disclosed a damages number of $5,718,990, she has entirely failed to provide any documentation of her claimed damages, nor has she provided any legitimate accounting and calculation of damages she claims to be entitled to as a result of this action. Defendants submitted contention interrogatories to plaintiff, including a detailed contention interrogatory on damages:

> **Interrogatory No. 9: Please describe in detail all damages you claim to have suffered as a result of conduct of defendants or any of them, provide your detailed computation of such damages, identifying any documents you have relied upon in computing such damages for such computation:**
>
> > **a.    Identify by name, address, occupation and educational background, all witnesses who will testify the damages you claim to have sustained.**
> >
> > **b.    Attach copies of all documentation, billings, invoices or other writings which evidence the damages you claim to have sustained.**

Moheban Aff., Ex. L at 6.

In response to this interrogatory, India did not produce a single document in proof of her damages claim. Plaintiff did submit a page and a half of largely unintelligible statements relating to a variety of vaguely identified assets, without identifying any basis for the damages claim, and without providing enough information to even understand the nature of the assets or calculations provided. *Id.* The plaintiff made reference to a "descentents [sic] trust damages of $1,157,142" and then identified a total damages number of $5,718,990. There is no lucid explanation in the response to the

interrogatories, or from any other information provided by plaintiff, how or why plaintiff believes she entitled to more than $5,000,000.

Defendants also propounded Interrogatory No. 6, which called for plaintiff to identify in detail any expert witnesses who would testify as to any matter on behalf of plaintiff. Moheban Aff., Ex. L at 5. In response to this interrogatory, Plaintiff stated that "plaintiff has consulted with a consulting expert and will identify the trial expert or experts, and the opinions of those trial experts within twenty-one (21) days of the completion of the depositions of the defendant attorneys." *Id.*

Although Plaintiff did produce a report from an expert regarding legal malpractice issues within the stated time period, Plaintiff has not disclosed a *damages* expert, nor has Plaintiff provided any further disclosure on the issue of damages. Thus, even if Plaintiff were able to proceed forward to trial on the issue of breach of the duty of care, Plaintiff has entirely failed to produce documentation, calculations, witnesses, experts or any other supporting evidence that would be essential to establishing a damages claim of any sort, let alone a damages claim on the order of more than five million dollars.

Consequently, if for no other reason, the Court must dismiss this case for failure to prove the essential elements of causation and damages.

## V. PLAINTIFF'S EXPERT OFFERS ONLY SPECULATION AND HIS REPORT LACKS A VALID FACTUAL FOUNDATION.

Plaintiff has submitted an expert report in which the expert offers an opinion that the Defendants have breached the duty of care. It is an odd report, in that the expert at one point opines, among other things, that attorney Stortz "violated the standard of care

in his note-taking." Ex. N at 7.   The report demonstrates a lack of care in preparation, such that the expert offers an opinion concerning "Byron Stortz" when the parties are "Byron Starns" and "Lowell Stortz." *Id.* at 2.   The expert report is invalid, however, as a matter of law, because it does not rest on a legitimate factual foundation.

The expert here simply ignored the proven facts, i.e., the documentary record between the Ennengas and their lawyers.  Instead, the expert conjectures reasons why the Ennengas might have had a different intent from that evidenced in their letters to and from attorneys, notes of their meetings, and their signatures on the estate plan documents.  As such, this expert is not offering legal conclusions based on a factual foundation provided elsewhere.  He is attempting to create his own factual foundation, based entirely on his conjecture about what might have been said -- without any supporting evidence

A court is expected to reject "any subjective belief or speculation." *Chapman v. Maytag Corp.,* 297 F.3d 682, 687 (7th Cir. 2002) (citing *Porter v. Whitehall Labs. Inc.,* 9 F.3d 607, 614 (7th Cir.1993)).   "An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process," and his "naked opinion" does not preclude summary judgment. *Mid-State Fertilizer v.  Exchange Nat'l Bank,* 877 F.2d 1333, 1339 (7th Cir. 1989). An expert's opinion based on "unsupported assumptions" and "theoretical speculations" is no bar to summary judgment. *Merit Motors, Inc. v. Chrysler Corp.,*  569 F.2d 666, 673 (D.C. Cir. 1977).

In particular, Plaintiff's expert in his report reviews the documentary record between the Ennengas and their counsel, and offers speculation that the Ennengas might not have understood what they were told in letters and conversations.  Ex. N at 11 ("a

brief 12-minute phone call would likely have been too short Tom and Ida Lou to make such a major change in their estate planning goal"); *id.* at 12 ("it would be very easy for Tom and Ida Lou not to realize that Stortz had drafted a different plan than the one that spawned the endorsement letters [sic] in May from Tom").   Although it is indisputable that Stortz accurately described, in his July 13, 2000 letter to the Ennengas, the estate plan that the Ennengas ultimately signed in August, the expert indulges his speculation that the Ennengas might not have understood the letter.   A case should not go to trial where the expert has to speculate that letters were not read and advice not understood to establish a breach of the duty of care.

The expert also focuses entirely on the Ennengas' intent "to make sure that all grandchildren were treated equally," Ex. N at 8, without ever acknowledging that the estate plan does in fact treat all grandchildren equally.   Thus, the expert assumes that this intent was not met without recognizing that it was in fact met in the final estate plan.

An expert cannot rescue a case without factual foundation by providing his own speculation.   This expert had no involvement in the discussions between the Ennengas and their attorneys, and cannot moonlight as a fact witness.   Because there is no valid factual foundation for the expert's opinions, this case cannot be salvaged by the fact that Plaintiff has retained an expert who is willing to offer his own conjecture as to what was said between the Ennengas and their lawyers.

Finally, the expert improperly attempts to offer an opinion as to a purported conflict of interest in Leonard, Street handling the Ennenga estate plan, without recognizing that the Court already has rejected this claim in Judge Reinhard's January 17,

2007 decision.  Moheban Aff., Ex. A.  Accordingly, this portion of the expert report should be stricken and given no consideration.

## CONCLUSION

For all the foregoing reasons, Defendants jointly request that the Court grant this motion for summary judgment and dismiss the remaining Count I of the Complaint with prejudice.

Dated:  December 1, 2008

/s/ Scott C. Sullivan
Scott C. Sullivan
**WILLIAMSMcCARTHY LLP**
P.O. Box 219
Rockford, Illinois 61105-0219
Telephone: 815-987-8900

Allen I. Saeks (MN. No. 95072)
Keith S. Moheban (MN No. 216380)
**LEONARD, STREET AND DEINARD**
  **Professional Association**
150 South Fifth Street, #2300
Minneapolis, Minnesota 55402
Telephone:  612-335-1500

**ATTORNEYS FOR DEFENDANTS
LOWELL STORTZ AND LEONARD,
STREET AND DEINARD
PROFESSIONAL ASSOCIATION**

## CERTIFICATE OF LAWYER AND NOTICE OF ELECTRONIC FILING

The undersigned certifies that:

1)     On December 1, 2008, the foregoing document was electronically filed with the District Court Clerk via CM/ECF filing system;

2)     Pursuant to Rule 5 of the Federal Rules of Civil Procedure, the undersigned further certifies that a copy of the foregoing document was electronically served upon the following:

Philip Jeffrey Nathanson, Esq.
The Nathanson Law Firm
120 N.  LaSalle St., Suite 1000
Chicago, IL 60602
philipj@nathansonlawfirm.com

Don M.  Mateer, Esq.
401 W.  State St., Suite 400
Rockford, IL 61101
dmateer@mateerlawfirm.com

Erik K. Jacobs
Hyzer, Hyzer & Jacobs
855 N. Madison Street
Rockford, IL 61107
ejacobs@ameritech.net

/s/ Scott C. Sullivan

Scott C. Sullivan, Esq.
**WILLIAMSMcCARTHY LLP**
P.O. Box 219
Rockford, Illinois 61105-0219
(815) 987-8900

**OF COUNSEL:**
Allen I. Saeks (MN No. 95072)
Keith S. Moheban (MN No. 216380)
**LEONARD, STREET AND DEINARD**
  **Professional Association**
150 South Fifth Street, Suite 2300
Minneapolis, Minnesota  55402
Telephone: (612) 335-1500

5744315v2