IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| George Ennenga, individually, and as Father and Next Friend of India Ennenga, a minor, | ) ) ) ) | No. 06 C50117<br>Judge Frederick J. Kapala |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | |
| Byron E. Starns, Lowell W. Stortz, Leonard, Street and Deinard, Woodruff A. Burt and Snow, Hunter, Whiton and Fishburn, Ltd., | ) ) ) ) ) | |
| Defendants. | ) | |

**STATEMENT OF UNDISPUTED FACTS PURSUANT TO LOCAL RULE 56.1 SUBMITTED BY DEFENDANTS LEONARD, STREET AND DEINARD AND LOWELL STORTZ**

Defendants Leonard, Street and Deinard Professional Association ("Leonard, Street") and Lowell Stortz ("Stortz") submit this Statement of Undisputed Facts pursuant to Local Rule 56.1 in support of their Motion for Summary Judgment:

### THE PARTIES

1. Plaintiff India Ennenga is a citizen and resident of New York. Second Amended Complaint ¶ 3. Plaintiff George Ennenga, a citizen and resident of New York, has previously been dismissed as a party and appears in this action as Father and Next Friend of Plaintiff India Ennenga. *Id.*

5745267v1

2. Defendant Leonard, Street and Deinard Professional Association is a citizen of Minnesota. Second Amended Complaint ¶ 9. Defendant Lowell V. Stortz is a citizen of Minnesota and shareholder in Leonard, Street. *Id.* ¶ 8. Defendant Byron E. Starns is a citizen of Minnesota and shareholder in Leonard, Street. *Id.* ¶ 6. The claims against Starns have been dismissed by prior order of the Court.

3. Defendant Woodruff Burt is a citizen of Illinois. Second Amended Complaint ¶ 10. Burt was a partner in Defendant Snow, Hunter, Whiton and Fishburn, Ltd., which is alleged to be an Illinois corporation, and which has been dismissed as a party by prior order of this Court.

## JURISDICTION AND VENUE

4. Plaintiff has asserted jurisdiction pursuant to 28 U.S.C. § 1332 and impliedly asserts venue is proper in this district because at least one defendant can be found, resides, and/or transacts business in this district pursuant to 28 U.S.C. § 1391(c).

## MATERIAL UNDISPUTED FACTS

5. In April 2000, Thomas and Ida Ennenga ("the Ennengas") retained Leonard, Street to prepare revisions to their estate plan. Second Amended Complaint ¶ 12. The lawyer assigned to this project was Lowell Stortz, an attorney who at that time had more than fifteen (15) years experience in the estate planning field. *Id.*

6. The Ennengas had an estate in the range of 3 to 4 million, and had three children – Connie, Lucie and George. The daughters, Connie and Lucie, each have three children. George has one child, a daughter named India. Affidavit of Keith S. Moheban [Moheban Aff.], Ex. E

2

7. Stortz met with the Ennengas in April of 2000 in Minnesota. In that first meeting he discussed with the Ennengas the process by which they would choose to retain Leonard, Street and Stortz as legal counsel. Moheban Aff., Ex. D at 21. Then, after some preliminary discussions, they proceeded with the discussion about their estate planning needs. *Id.* Stortz kept notes of the meeting. Moheban Aff., Ex. E.

8. One topic they discussed was Thomas' "feelings and attitudes about his son" and "the reasons why he intended to create his estate plan in a form different from what he had at the time." Ex. D at 30. Thomas stated that George's share "needed to be protected in some manner so that George didn't dissipate it." *Id.* In contrast, the Ennenga's "had full confidence in their two daughters and their two daughters' ability to handle money and make decisions about money." *Id.* at 31.

9. As Stortz clearly recalled, the Ennengas had a good idea what they wanted in their plan. He testified "they came to that meeting with an overall sense of the plan they wanted, although they did not articulate it in the way an estate planner would, they knew what they wanted to do." *Id.* In particular, "they had a concern with respect to how their estate would be distributed, or a portion of their estate might be distributed to their granddaughter, India, or to their other grandchildren." *Id.* The Ennengas informed Storz that India's other grandparents were very wealthy. *Id.* at 32.

10. In light of the fact that she would be well cared for by her other grandparents, the notes Stortz took at the meeting record **the Ennengas desire that India would receive an "amount equal to one-seventh to her from George's share**." *Id.* at 32-33 (emphasis supplied); Ex. E. The Ennengas advised Stortz that they wanted "on

3

George's death, one-seventh of his interest would go to his daughter and the rest would go to the other grandchildren." *Id.* at 34-35. Because the Ennengas daughters, Connie and Lucie, would receive their shares as gifts outright, the estate plan would not have any control how those shares were used or otherwise potentially passed on to the grandchildren or otherwise disposed.[1] *Id*. at 35.

11. Under this proposed estate plan, the grandchildren literally were treated exactly equally. Each of the Ennengas' children received a one-third share of the Ennenga's estate. Each of the Ennenga's grandchildren received a one-seventh share of any remainder of George's spendthrift share upon his death. *Id.*

12. After this meeting with the Ennengas, Stortz wrote a letter on May 5, 2000 to Woodruff Burt, who was the Ennengas' lawyer in Illinois. Moheban Aff. Ex. F. In this letter he discussed what the Ennengas had told him about their estate plan, and advised that the Ennengas wanted Burt and Stortz to work together in preparing the new estate plan. Also in this letter, Stortz reiterated the Ennengas' desire to have a limitation on George's use of his share of the inheritance. Stortz told Burt in the letter that "[o]ne of their primary motivations in revising their estate plan is to set up a structure that will allow their son, George, to benefit from a share of the estate without exposing it to

---

[1] For tax purposes the estate plan ultimately provided that some assets might go to Connie and Lucie in the form of trusts. Unlike George's trust, however, Connie and Lucie were provided full control over their trusts without any spendthrift provisions, and they, unlike George, would have the power to determine the ultimate disposition of the trust assets their deaths. The Ennengas thus did not require, and did not retain, any power over the ultimate disposition of the shares given to Connie or Lucie upon the death of Connie or Lucie.

4

creditors or making it too easily available to fund business or investment plans that he may have that would pose a substantial risk of loss. " *Id.* at 1.

13. Stortz elaborated that "[as] a result, Tom suggested to me, and I concurred with this conclusion, that a "generation skipping" trust might be in order . . . I mean a trust that is held and administered in trust throughout George's lifetime, providing him income and principal as needed for his health care, support, etc.." *Id.* at 1-2.

14. Stortz also discussed India in this letter, stating that "George has one daughter, India, who according to Tom and Ida Lou will be well provided for by her mother's parents. As a result, Tom and Ida Lou would like the trust held for George, **following George's death, to be distributed in part to India and the balance in equal shares to their other grandchildren**." *Id.* at 2. (emphasis supplied). The Ennengas were copied on this letter. *Id.*

15. On May 18, 2000, Burt wrote back to Stortz and indicated "I spoke by telephone to the Ennengas and received their blessing to send you copies of their current wills." Moheban Aff. Ex. G. Burt went on to say that "we are in agreement on at least some of the fundamentals, specifically: . . . **George's share is to remain in trust for his life. He should receive the income . . . Upon his death the remaining principal and undistributed net income are to be divided, per capita, among the Settlors' grandchildren**." *Id.* (emphasis supplied). The Ennengas were copied on this letter. *Id.*

16. On May 20, 2000, Thomas Ennenga wrote a letter to Lowell Stortz with a copy to Burt. Moheban Aff., Ex. H. Thomas stated:

5

> We have reviewed the W.A. Burt letter to you. We believe it outlines our intentions quite clearly.

*Id.*

17. On July 13, 2000, Stortz wrote a letter to Thomas and Ida Louise that again in much more detail described the terms of the estate plan that he prepared for them. Moheban Aff., Ex. I. He explained that the estate plan involved preparing individual wills for each of the Ennengas individually, and providing that ultimately the estate of the last spouse to die would transfer into a family trust and marital trusts. Stortz then explained that:

> After the death of the surviving spouse, the Family Trust and Marital Trust will be divided into three equal shares, one share for each of your children. Assets exempt from the GST tax will be transferred to a trust for George and administered for the rest of his life. During George's lifetime, he will receive five percent (5%) of the trust value every year. **At George's death, his trust will be divided into equal shares, one share for each of your grandchildren and administered for their benefit until age thirty.**

*Id.* at 5 (emphasis supplied). This letter also was copied to Burt. *Id.*

18. On June 21, 2000, Stortz wrote a memorandum to the file describing the specifics of the estate plan. In this memorandum, Stortz wrote:

> They have three children, Constance Starns, Lucie Gadenne and George Ennenga. After both spouses have died, split the estate into three shares for the children. Assets exempt from the generation-skipping transfer tax should be used such that the one-third share set aside for George is exempt from the generation-skipping transfer tax. Any remaining exempt assets should be split equally between a trust for Connie and a trust for Lucie. To the extent that the shares for Connie and Lucie exceed the amounts exempt from the generation-skipping transfer tax, the excess should be distributed outright to them.

Moheban Aff., Ex. J at 1.

19. With respect to George's share, Stortz wrote:

6

> **On George's death, his share will be split equally among the grandchildren of Thomas and Ida Lou Ennenga**. With a share for a deceased grandchild being divided for such deceased grandchild's issue by right of representation.

*Id.* at 2 (emphasis supplied).

20. On August 8, 2000, Thomas and Ida Lou executed estate planning documents, including Last Will of Thomas Ennenga, the Last Will of Ida Louise Ennenga, and two Revocable Trust Agreements.[2] The Revocable Trust Agreement, Exhibit K, contains the relevant provisions relating to trust shares that are to be allocated among the grandchildren. In Section 8(B)(2)(c), the Trust provides that:

> At George Ennenga's death, or if he predeceases the survivor of my spouse and me, the Trustee shall **divide George's Trust into as many equal shares as shall be necessary to allocate one trust share for the benefit of each grandchild** of mine who is then living, and one trust share for the benefit of the then living issue, collectively, of the deceased grandchild of mine.

Moheban Aff., Ex K at 14 (emphasis supplied). The document bears the notarized signature of Thomas Ennenga at page 34.

21. Defendants submitted contention interrogatories to plaintiff, including a detailed contention interrogatory on damages:

> **Interrogatory No. 9: Please describe in detail all damages you claim to have suffered as a result of conduct of defendants or any of them, provide your detailed computation of such damages, identifying any documents you have relied upon in computing such damages for such computation:**

---

[2] These documents are quite voluminous and are already in the record as they were attachments to the Second Amended Complaint. Because the provisions of interest are located in the Revocable Trust Agreement, that document is included here as Exhibit K.

7

> **a. Identify by name, address, occupation and educational background, all witnesses who will testify the damages you claim to have sustained.**
>
> **b. Attach copies of all documentation, billings, invoices or other writings which evidence the damages you claim to have sustained.**

Moheban Aff., Ex. L at 6.

22. In response to this interrogatory, India did not produce a single document in proof of her damages claim. Plaintiff did submit a page and a half of largely unintelligible statements relating to a variety of vaguely identified assets, without identifying any basis for the damages claim, and without providing enough information to even understand the nature of the assets or calculations provided. *Id.*

23. Defendants also propounded Interrogatory No. 6, which called for plaintiff to identify in detail any expert witnesses who would testify as to any matter on behalf of plaintiff. Moheban Aff., Ex. L at 5. In response to this interrogatory, Plaintiff stated that "plaintiff has consulted with a consulting expert and will identify the trial expert or experts, and the opinions of those trial experts within twenty-one (21) days of the completion of the depositions of the defendant attorneys." *Id.* This discovery was completed more than twenty-one (21) days ago, but Plaintiff has not disclosed an expert witness on damages or produced a damages report.

                                              Respectfully submitted,

Dated: December 1, 2008                /s/ Scott C. Sullivan
                                        Scott C. Sullivan
                                        **WILLIAMSMcCARTHY LLP**
                                          P.O. Box 219
                                          Rockford, Illinois 61105-0219
                                          Telephone: 815-987-8900

                                          Allen I. Saeks (MN No. 95072)
                                          Keith S. Moheban (MN No. 216380)
                                          **LEONARD, STREET AND DEINARD**
                                            **Professional Association**
                                          150 South Fifth Street, #2300
                                          Minneapolis, Minnesota 55402
                                          Telephone: 612-335-1500


                                          **ATTORNEYS FOR DEFENDANTS**
                                          **LOWELL STORTZ AND LEONARD,**
                                          **STREET AND DEINARD**
                                          **PROFESSIONAL ASSOCIATION**

### **CERTIFICATE OF LAWYER AND NOTICE OF ELECTRONIC FILING**

The undersigned certifies that:

1) On December 1, 2008, the foregoing document was electronically filed with the District Court Clerk via CM/ECF filing system;

2) Pursuant to Rule 5 of the Federal Rules of Civil Procedure, the undersigned further certifies that a copy of the foregoing document was electronically served upon the following:

Philip Jeffrey Nathanson, Esq.
The Nathanson Law Firm
120 N. LaSalle St., Suite 1000
Chicago, IL 60602
philipj@nathansonlawfirm.com

Don M. Mateer, Esq.
401 W. State St., Suite 400
Rockford, IL 61101
dmateer@mateerlawfirm.com

Erik K. Jacobs
Hyzer, Hyzer & Jacobs
855 N. Madison Street
Rockford, IL 61107
ejacobs@ameritech.net

   /s/ Scott C. Sullivan

Scott C. Sullivan, Esq.
**WILLIAMSMcCARTHY LLP**
P.O. Box 219
Rockford, Illinois 61105-0219
(815) 987-8900

**OF COUNSEL:**
Allen I. Saeks (MN No. 95072)
Keith S. Moheban (MN No. 216380)
**LEONARD, STREET AND DEINARD**
 **Professional Association**
150 South Fifth Street, Suite 2300
Minneapolis, Minnesota 55402
Telephone: (612) 335-1500

10

5745267v1